**D. Michael Dale, OSB #771507**
michaeldale@dmichaeldale.net
Northwest Workers' Justice Project
812 SW Washington St #225
Portland, OR 97205
Telephone: (503) 525-8454
Fax: (503) 946-3029

**Mark Wilk, OSB #814218**
mwilk@oregonlawcenter.org
**Shannon Garcia, OSB #162178**
sgarcia@oregonlawcenter.org
Oregon Law Center
230 W. Hayes St.
Woodburn, OR 97071
Phone: (503) 981-0336
Fax: (503) 981-0373

Attorneys for Plaintiffs

**Laurie Hoefer, OSB # 054234**
laurie.hoefer@lasoregon.org
Legal Aid Services of Oregon
397 N 1st St.
Woodburn OR  97071
Telephone: (503) 981-5291
Fax: (503) 981-5292

Attorneys for Plaintiff Rufino Rendon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **MARIA ORTIZ BAZAN, MARISELA HERNANDEZ, BERNABE CORTES REYES, MARTINA ANASTASIO HERNANDEZ, ROSA AMELIA LOPEZ, ASUNCION REYES PEREZ, LEONARDO SILVA CHAVEZ, RUFINO RENDON** and **JUAN TORIBO LOPEZ,** individuals, | Case No.: <br><br> COMPLAINT <br><br> DEMAND FOR JURY TRIAL |

COMPLAINT – 1

Plaintiffs,

v.

**COLEMAN INDUSTRIES, INC,** an
Oregon Domestic Business Corporation
and **COLEMAN AGRICULTURE,
INC.,** an Oregon Domestic Business
Corporation, and **WAFLA,** a
Washington non-profit organization,

Defendants.

## I. INTRODUCTION

1.      Maria Ortiz Bazan, Marisela Hernandez, Bernabe Cortes Reyes, Martina

Anastasio Hernandez, Rosa Amelia Lopez, Asuncion Reyes Perez, Leonardo Silva Chavez,

Rufino Rendon, and Juan Toribo Lopez ("Plaintiffs") bring this action against Coleman

Industries, Inc., Coleman Agriculture, Inc., and WAFLA (collectively "Defendants") for

violation of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801 et

seq. (hereinafter "AWPA"); Breach of Contract; O.R.S. § 652.150; 42 U.S.C. § 1981, O.R.S. §

659A.030, O.R.S. § 659A.112, 42 U.S.C. § 12112, and 42 U.S.C. § 2000e-2 et seq.

## II. JURISDICTION

2.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1801, 28

U.S.C. § 1331, and 29 U.S.C. § 1854(a)(AWPA), as it arises under the laws of the United States,

and under 28 U.S.C. § 1337, as it arises under acts of Congress regulating commerce.

3.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the

claims based on Oregon law, as they are so related to claims within the Court's original

jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution.

4.     Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b)(2) because Marion County is in this district and the events giving rise to Plaintiffs' claims occurred in this district.

## III. PARTIES

5.     Maria Ortiz Bazan, Marisela Hernandez, Bernabe Cortes Reyes, Martina Anastasio Hernandez, Rosa Amelia Lopez, Asuncion Reyes Perez, Leonardo Silva Chavez, Rufino Rendon, and Juan Toribio Lopez are natural persons who were employed by Defendants in Marion County, Oregon.

6.     At all times relevant to this action, Coleman Industries, Inc. was an Oregon domestic business corporation operating an agricultural farm.  Its principal place of business is Marion County.

7.     At all times relevant to this action, Coleman Agriculture, Inc. was an Oregon domestic business corporation operating an agricultural farm. Its principal place of business is Marion County.

8.     At all times relevant to this action, WAFLA, was a Washington non-profit corporation organized under section 501(c)(6) of the Internal Revenue Code. Wafla was a joint employer of Plaintiffs.

9.     At all relevant times, Defendants employed at least 15 people and were engaged in an industry affecting commerce.

## IV. FACTUAL ALLEGATIONS

10.     Defendants Coleman Industries, Inc. and Coleman Agriculture, Inc. own and operate an agricultural farm specializing in hops in Marion County, Oregon.

COMPLAINT – 3

11. Defendant WAFLA arranged the employment of foreign agricultural workers under the H-2A program for Defendants Coleman Industries, Inc. and Coleman Agriculture, Inc., and was a joint employer of the workers in 2017.

12. In 2017 and 2018, Defendants were agricultural employers pursuant to the statutory definition of 29 U.S.C. § 1802(2).

13. In 2017, Plaintiffs were seasonal agricultural workers pursuant to the statutory definition of 29 U.S.C. § 1802(10)(a).

14. In 2018, at the time Plaintiffs Rendon and Martina Anastasio Hernandez applied for work with Defendants, they were seasonal agricultural workers pursuant to the definition of 29 U.S.C. § 1802(10)(a).

15. Plaintiffs worked for Defendants in 2017 as temporary seasonal workers.

16. During the course of employment, Plaintiffs worked on products that were produced for movement in interstate commerce or for incorporation as an ingredient in products that could be anticipated to move in interstate commerce.

17. In 2017 and 2018, Defendants filed multiple Applications for Temporary Employment Certification with the U.S. Department of Labor to bring foreign workers to work on its farm under the H-2A visa program.

18. The U.S. Department of Labor approved Defendant's H-2A applications for 2017 and 2018.

19. As part of the H-2A application process, Defendants filed job orders with the Oregon Employment Department.

20. The job orders contained the material terms and conditions of the Defendants' hired H-2A workers from April 11, 2017, through September 30, 2017, from August 17th, 2017,

to September 30th, 2017, from April 2, 2018, to June 18th, 2018, and from August, 15th, 2018, to September 30th, 2018.

21. During each season, Defendants were required to engage in "positive recruitment" of U.S. workers until foreign workers departed for the work site in Oregon. 20 C.F.R. § 655.103(d).

22. Prior to the approval of the H-2A applications Thomas Coleman, signed the H-2A application on behalf of Defendants for work commencing in April 2017.

23. Jennifer Coleman signed the job order on behalf of Defendants Coleman for work commencing in August 2017.

24. John Coleman signed the job order on behalf of Defendants Coleman for work commencing in April 2018.

25. As part of the H-2A application, Defendants assured the federal government that it would comply with all federal and state employment laws.

26. Pursuant to federal regulations governing the H-2A program, Defendants were required to inform job seekers of the terms and conditions of the job.

27. Defendants failed to inform job seekers of the terms and conditions of the job.

28. Pursuant to federal regulations governing the H-2A program, Defendants were required to provide employment to any qualified, eligible U.S. worker who applied to the employer until 50 percent of the period of the work had elapsed pursuant to 20 CFR 655.135(d).

29. Defendants failed to provide employment to qualified, eligible U.S. workers, including Plaintiff Rendon and Plaintiff Martina Anastasio Hernandez, who applied to the employer before 50% of the contract period had elapsed.

30. Each of the Plaintiffs had sufficient work experience and was qualified to perform

the H-2A jobs.

31. Prior to 2017 Defendants had used a labor contractor, Franks Farm Labor Contracting, Inc., ("Franks Farm"), to recruit and provide workers for Defendants to work as temporary seasonal workers in the hops season

32. In 2017, Defendants used Franks Farm, to hire Plaintiffs, except for Plaintiff Rendon, to be employed as temporary seasonal workers by Defendants during the hop season.

33. Plaintiff Rendon was not contracted through Franks Farm but also worked for Defendants as a temporary seasonal worker in 2017.

34. Franks Farm was given a much smaller farm to supply workers in 2017 than previously, and the farm where his workers had been previously hired was set aside for H-2A workers.

35. Defendants were required under the H-2A program to pay workers an adverse effect wage rate (AEWR) set forth by the U.S. Department of Labor.

36. Defendants' 2017 job orders specified that employees would be paid a wage rate of $13.38 per hour.

37. Defendants paid Plaintiffs Maria Ortiz Bazan, Bernabe Cortes Reyes, Martina Anastasio Hernandez, Asuncion Reyes Perez, Leonardo Silva Chavez, and Juan Toribo Lopez an hourly rate of $11.25 for work performed during the 2017 job order contracts.

38. Defendants paid Plaintiff Marisela Hernandez an hourly rate of $12.25 for work performed during the 2017 job order contracts.

39. Defendants paid Plaintiff Rosa Amelia Lopez an hourly rate that ranged from $12.00 to $12.25 for work performed during the 2017 job order contracts.

40. Defendants paid the foreign workers it hired for the H-2A jobs in 2017 the

adverse-effect wage rate (AEWR) set by the U.S. Department of Labor of at least $13.38 per hour.

41.     Plaintiffs claim as unpaid wages the difference between the hourly rate of $13.38 and the hourly rate they were paid in 2017, plus, the difference between the reduced hours they were able to work in 2017 as compared to the hours worked by H-2A.

42.     During the course of Plaintiffs' employment with Defendants and during the period of employment covered by the H-2A job orders, Plaintiffs performed work included in the H-2A job order, including but not limited to walking through the hop fields removing weeds, driving the hop vine truck, planting, cleaning debris, and training the small hops shoots onto the twine.

43.     In 2018, Defendants did not solicit U.S. workers through Franks Farm, and did not otherwise recruit Plaintiffs other than Plaintiff Rufino to work.

44.     Because of the failure of Defendants to recruit them to work in 2018, none of the Plaintiffs were employed by Defendants in 2018 except for Plaintiff Rufino who was only hired for work under the August 2018 job order.

45.     Defendants violated, without justification, the working arrangements with Plaintiffs in violation of 29 U.S.C. § 1822(c).

46.     Plaintiff Rendon was referred to Defendants' April hops job by the Oregon Employment Department.

47.     In approximately spring 2018, Plaintiffs Rufino Rendon and Martina Anastasio Hernandez went to Defendants directly to ask for work for the hop season.

48.     Plaintiff Rendon is a U.S. citizen and has lived many years in the United States.

49.     Plaintiff Rendon worked for Defendants in August 2017.

50.     Plaintiff Rendon went to Defendants' office on or about March 1, 2018, and put his name and contact information on a paper indicating that he wanted to work with Defendants.

51.     Plaintiff Rufino Rendon again applied to work for Defendants in approximately the first week of April 2018.

52.     In approximately the first week of April 2018, Plaintiff Rufino Rendon went to Defendants' office and filled out an application.

53.     That same day, Defendants interviewed Mr. Rendon.

54.     During the interview, Defendants asked Plaintiff Rufino Rendon if he could lift 60 pounds.

55.     The job orders for the April and August 2018 hops work included a job qualification requiring workers to lift 60 pounds.

56.     Plaintiff Rufino Rendon explained that he could not lift 60 pounds because he had a previous injury to his arm and lower back.  Plaintiff Rufino Rendon also told Defendants that he had done the job before and was physically able to do the job.

57.     Defendants did not ask any other questions about Plaintiff Rufino Rendon's disability or perceived disability, or about what Mr. Rendon could or could not do, or whether he needed an accommodation to perform the work.

58.     Defendants told Plaintiff Rufino Rendon that they would call him about whether there was work for him.  Mr. Rendon called and left a message for "John" asking him for the temporary hop work.

59.     Defendants did not return Plaintiff Rufino Rendon's phone message.

60.     Defendants did not offer employment to Plaintiff Rufino Rendon or employ him in April 2018.

61.     Defendants perceived that Plaintiff Rendon had a physical impairment as defined under 42 U.S.C. §12102(3) and 29 C.F.R. §§ 1630.2(g)(l), because Plaintiff Rendon told Defendants that he could not lift 60 pounds because of injuries to his arm and lower back, and Defendants refused to hire him on that basis.

62.     Plaintiff Rendon, who was employed as a hop worker both before and after Defendants refused to hire him in April 2018, could satisfy legitimate job-related requirements and perform the essential functions of the position, and was qualified to do the job under 42 U.S.C. § 12112(8) and 29 C.F.R. § 1630.2(m).

63.     Plaintiff Rendon has a record of having a physical impairment that substantially limits one or more of his major life activities, and/or Defendants regarded Plaintiff Rendon as having physical impairments that substantially limit one or more of his major life activities.

64.     Plaintiff Rendon was a qualified individual capable of performing the essential functions of the April hops job with Defendants, with or without a reasonable accommodation.

65.     Defendants treated Plaintiff Rendon less favorably than H-2A foreign workers.

66.     Plaintiff Rufino Rendon again applied for temporary hop work with Defendants in August 2018, and was hired and performed the work required.

67.     Defendants' 60 pound lifting requirement was not a prevailing practice consistent with business necessity or an essential function of the job.

68.     The job requirement listed in Defendants' April and August 2018 job orders requiring workers to lift 60 pounds had disproportionate negative impacts on individuals with disabilities and those perceived to have disabilities.

69.     As a direct result of the Defendants' actions, Plaintiff Rendon has suffered economic loss and emotional distress, including but not limited to loss of wages, humiliation,

and anxiety.

70.     On or about January 24, 2019, Plaintiff Rendon timely filed charges of discrimination with the Oregon Bureau of Labor and Industries (BOLI). These charges were simultaneously filed with the federal Equal Employment Opportunity Commission (EEOC) pursuant to a work sharing agreement between the two agencies.

71.     On August 15, 2019, the EEOC notified Plaintiff Rendon of his right to file a private civil suit with regard to his federal American with Disabilities Act (ADA) claim and national origin claim.

72.     On November 5, 2019, BOLI notified Plaintiff Rendon on his right to file a private civil suit on his Oregon Discrimination claims.

73.     In spring 2018, Plaintiff Martina Anastasia Hernandez went to Defendants to ask for work.

74.     After Plaintiff Martina Anastasia Hernandez went to Defendants to ask for work, she was asked to attend an orientation meeting on approximately May 14, 2018.

75.     When Plaintiff Martina Anastasia Hernandez showed up to the orientation Defendants did not have an orientation meeting but instead asked her for her name and phone number and told her that they would call her for work.

76.     Defendants never called Plaintiff Martina Anastasia Hernandez for work or employed her in 2018.

77.     During the 2018 April hop season, Defendants contracted foreign workers.

78.     Upon information and belief, foreign workers Defendants hired for 2018 H-2A job orders continued working after Plaintiff Rendon and Plaintiff Martina Anastasia Hernandez were not employed in spring 2018 for the full period of the job order contract.

79.     At all relevant times, Plaintiff Rendon and Plaintiff Martina Anastasia Hernandez were U.S. workers and persons within the jurisdiction of the United States.

80.     Defendants knowingly misrepresented the terms and conditions of Plaintiffs' employment, Plaintiff Rendon and Plaintiff Martina Anastasia Hernandez, including the availability of work.

81.     Defendants' violations were intentional under AWPA, 29 U.S.C. § 1854(c)(1).

82.     On August 23, 2019, Plaintiffs' counsel sent Defendants Coleman Industries, Inc. and Coleman Agriculture, Inc. written demand for payment of Plaintiffs' wages and outlining Plaintiffs' claims for breach of contract and under the Migrant and Seasonal Agricultural Workers Protection Act (AWPA). To date, Defendants have not tendered payment of wages to Plaintiffs.

83.     Plaintiffs have attempted in good faith to resolve the issues in dispute without litigation as required by 29 U.S.C. § 1854(c)(2).

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Migrant and Seasonal Agricultural Workers Protection Act (AWPA)

84.     By failing to pay Plaintiffs other than Plaintiff Rendon the 2017 AEWR, Defendants failed to pay all wages owed to Plaintiffs other than Plaintiff Rendon when due in violation of 29 U.S.C. § 1832(a).

85.     Defendants violated the terms of its working arrangement with Plaintiffs in violation of 29 U.S.C. § 1832(c) by failing to pay Plaintiffs other than Plaintiff Rendon the 2017 AEWR.

86.     Defendants knowingly provided false or misleading information to Plaintiffs Martina Anastasio Hernandez and Rufino Rendon concerning the terms, conditions or existence

of employment available in violation of 29 U.S.C. §1831(e) by not telling Plaintiffs of the 2018

jobs for which they were qualified.

87.     Defendants knowingly violated the terms of its working arrangements with

Plaintiffs Rufino Rendon and Martina Anastasio Hernandez in violation of 29 U.S.C. § 1832(c)

by failing to employ them in Spring 2018.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract**

88.     The issuance of clearance order by the Department of Labor created a contractual

obligation to domestic workers, including the above named Plaintiffs, as an employment

contract.

89.     Plaintiffs' interest in this contract was breached when Coleman favored H-2A

workers with higher wages and employment contracts in 2017 and 2018.

90.     Plaintiffs' claim damages for the difference between the hourly AEWR rate and

the hourly rate they were paid.

91.     Plaintiff Maria Martina Ortiz Bazan suffered damages of approximately $800.18

under the 2017 ETA clearance application.

92.     Plaintiff Marisela Hernandez suffered damages of approximately $134.19 under

the 2017 ETA clearance application.

93.     Bernabe Cortes Reyes suffered damages of approximately $3,164.38 under the

2017 ETA clearance application.

94.     Martina Anastasio Hernandez suffered damages of approximately $2,725.53

under the 2017 ETA clearance application.

95.     Asuncion Reyes Perez suffered damages of approximately $1,919.74 under the

2017 ETA clearance application.

96.     Leonardo Silva Chavez suffered damages of approximately $980.85 under the 2017 ETA clearance application.

97.     Juan Toribio Lopez suffered damages of approximately $2,143.38 under the 2017 ETA clearance application.

98.     Martina Anastasio Hernandez suffered damages of approximately $10,604.12 under the 2018 ETA clearance application.

99.     Rufino Rendon suffered damages of approximately $6,212.80 under the 2018 ETA clearance application.

## THIRD CLAIM FOR RELIEF

### Violations of Oregon's Timely Payment of Wages Law

100.     Defendants failed to pay Plaintiffs except for Plaintiff Rendon all of their wages when due upon termination of their employment within the time specified in O.R.S. § 652.145.

101.     Defendants' failure to pay Plaintiffs other than Plaintiff Rendon all of their wages upon termination of employment was willful.

102.     Plaintiffs other than Plaintiff Rendon are entitled under O.R.S. § 652.150 to recover statutory penalty damages in an amount equal to 240 times their hourly rate, plus reasonable attorneys' fees and costs for Defendants' failure to pay Plaintiffs' wages upon termination..

## FOURTH CLAIM FOR RELIEF

### Discrimination under 42 U.S.C. § 1981

103.     In 2018, Defendants deprived Plaintiffs Martina Anastasio Hernandez and Rufino Rendon of an equal right to make and enforce contracts in violation of 42 U.S.C. § 1981, which applies to persons within the United States.

104.     In 2018, Defendants deviated from their longstanding practice of using a domestic

farm labor contractor to recruit and employ workers for the hops season.

105.    Furthermore, Defendants outright denied employment in hops when requested by

Plaintiffs Martina Anastasio Hernandez and Rufino Rendon, confirming the belief that

Defendants were discriminating against U.S. workers in its hiring of workers for the hops season.

## FIFTH CLAIM FOR RELIEF

## Discrimination under O.R.S. § 659A.030

106.    In 2018, By subjecting Plaintiff Rendon, a U.S. worker, to less favorable

treatment and failing to hire Plaintiff Rendon because of his national origin, Defendants

discriminated against him in violation of O.R.S. § 659A.030.

## SIXTH CLAIM FOR RELIEF

## Oregon Employment Discrimination Against Persons with Disabilities O.R.S. § 659A.112

107.    Defendants' actions against Plaintiff Rendon constituted unlawful discrimination

against a worker with a disability or perceived disability, in violation of O.R.S. § 659A.112.

108.    Defendants' utilization of standards and criteria, including the 60 pound lifting

requirement, had the effect of discrimination on the basis of disability, in violation of O.R.S. §

659A.112.

109.    Defendants' use of qualification standards, including 60 pound lifting

requirement, screened out or tended to screen out individuals on the basis of disability or

perceived disability in violation of O.R.S. § 659A.112.

110.    Plaintiff has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

## Title I of the ADA 42 U.S.C. § 12112

111.     Defendants discriminated against Plaintiff Rendon on the basis of his disability or a perceived disability in violation of 42 U.S.C. § 12112 by failing to hire him because of his disability or perceived disability.

112.     Defendants violated 42 U.S.C. §12112 by utilizing qualification standards, including the 60 pound lifting requirement, that had the effect of discriminating, discouraging and screening out workers on the basis of their disability or perceived disability.

## EIGHT CLAIM FOR RELIEF 42 U.S.C. 2000e-2

113.     By subjecting Plaintiff Rendon, a U.S. worker, to less favorable treatment because of his national origin, Defendants discriminated against him in violation of 42 U.S.C. § 2000e-2.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

1.     On Plaintiffs First Claim for Relief (AWPA), award Plaintiffs actual damages or statutory damages of $500.00 per violation, whichever is greater, and injunctive relief on behalf of Plaintiffs Rendon and Hernandez pursuant to 29 U.S.C. § 1854(c)(1) ordering Defendants to comply with the AWPA;

2.     On Plaintiffs Second Claim for Relief (Contract), damages of $36,652.86, or such further amounts as are shown at trial;

3.     On Plaintiffs Third Claim for Relief (Wages), civil penalties in the amount of 240 times Plaintiffs' hourly wage pursuant to O.R.S. § 652.150 for failure to pay Plaintiffs' wages promptly upon termination, other than Plaintiff Rendon;

4.     On Plaintiff Rendon and Plaintiff Martina Anastasio Hernandez Fourth Claim for Relief, discrimination under 42 U.S.C. § 1981 compensatory damages including back pay

and emotional distress damages in amount to be determined at trial but no less than $25,000 each.

5.      On Plaintiff Fifth, Sixth, Seventh, and Eighth claim judgment against Defendants and in favor of Plaintiff Rendon for compensatory damages including lost wages in the amount of $6,212.80 and noneconomic damages for Plaintiff Rendon of at least $25,000 or $200.00, whichever is greater, pursuant to O.R.S. 659A.885, and appropriate injunctive relief as determined by the court.

6.      Find that Plaintiffs are the prevailing party and award Plaintiffs reasonable attorney fees and costs under O.R.S. § 20.082, O.R.S. § 652.200, ORS 659A.885(1), 42 U.S.C. § 12205, and 42 U.S.C. §2000e-5(k).

7.      Award Plaintiffs pre-judgment interest and post-judgment interest as allowed by law; and

8.      Award Plaintiffs such other relief as this Court deems just and proper.

Respectfully submitted this 12th day of November, 2019.

NORTHWEST WORKERS' JUSTICE PROJECT
OREGON LAW CENTER
LEGAL AID SERVICES OF OREGON

/s/ D. Michael Dale_____
D. Michael Dale, OSB #771507
Lizeth Marin, OSB #185269
Mark Wilk, OSB #814218
Attorney for Asuncion Reyes Perez,
Juan Toribio Lopez, and Rufino
Rendon
David Roy Henretty, OSB # 031870
Attorney for Asuncion Reyes Perez,
Juan Toribio Lopez, and Rufino
Rendon
Shannon Garcia, OSB #162178
Attorney for Asuncion Reyes Perez,
Juan Toribio Lopez, and Rufino
Rendon

Laurie Hoefer, OSB #054234
Attorney for Rufino Rendon
Attorneys for Plaintiffs