**Timothy J. Bernasek, OSB No. 990273**
**Email: tbernasek@dunncarney.com**
**Chelsea J. Glynn, OSB No. 114004**
**Email: cglynn@dunncarney.com**
Dunn Carney Allen Higgins & Tongue LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204-1357
Telephone: 503.224.6440
Fax: 503.224.7324

    Attorneys for Defendants Coleman Industries, Inc.,
    Coleman Agriculture, Inc., and wafla

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **MARIA ORTIZ BAZAN, MARISELA HERNANDEZ, BERNABE COTES REYES, MARTINA ANASTASIO HERNANDEZ, ROSA AMELIA LOPEZ, ASUNCION REYES PEREZ, LEONARDO SILVA CHAVEZ, RUFINO RENDON** and **JUAN TORIBO LOPEZ,** individuals,<br><br>                Plaintiffs,<br><br>v.<br><br>**COLEMAN INDUSTRIES, INC.,** an Oregon Domestic Business Corporation and **COLEMAN AGRICULTURE, INC.,** an Oregon Domestic Business Corporation, and **WAFLA,** a Washington non-profit organization,<br><br>                Defendants. | Case No. 6:19-cv-01823-MK<br><br>**DEFENDANTS COLEMAN INDUSTRIES, INC., COLEMAN AGRICULTURE INC., AND WAFLA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(ORAL ARGUMENT REQUESTED)** |

## LR 7-1 CERTIFICATION

Pursuant to LR 7-1(a), counsel for Coleman Industries, Inc., Coleman Agriculture, Inc. and wafla (collectively "Defendants") certify that they have conferred in good faith with counsel for Plaintiffs in an attempt to resolve the issues presented in this motion, but were unsuccessful.

## LR 7-2 CERTIFICATE OF COMPLIANCE

This brief complies with the word-count limitation under LR 7-2(b) because it contains less than 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P 56(a), Defendants move for summary judgment as to all claims against wafla.

Additionally, Defendants move for summary judgment on the following claims against Coleman Industries, Inc. and Coleman Agriculture, Inc. (collectively "Coleman Defendants"):

1. First Claim for Relief - Violations of The Migrant and Seasonal Agricultural Workers Protection Act ("MSPA") except as to plaintiffs Martina Anastasio Hernandez's and Rufino Rendon's 2018 claims;

2. Second Claim for Relief - Breach of Contract except as against plaintiffs Martina Anastasio Hernandez and Rufino Rendon's 2018 claims; and

3. Third Claim for Relief- Violations of Oregon's Timely Payment of Wages Law.

## STATEMENT OF FACTS

This case involves the United States Department of Labor's H-2A temporary agricultural labor program ("H-2A Program"). The H-2A program provides a process for the lawful admission into the United States of temporary, nonimmigrant workers to perform agricultural work upon a showing that there is a shortage of domestic workers who are able, willing and qualified to do such work. *Declaration of Timothy J. Bernasek* ("*Bernasek Decl.*"), ¶ 3, Ex. 2 ("DOL Employer Guide to H-2A Program"). Any employer using the H-2A Program must show that the employment of the requested foreign workers will not adversely affect the wages and working conditions of

similarly employed domestic workers. *Id.* Accordingly, domestic workers who are engaged in corresponding employment (work of similar nature in the same area of intended employment) with the foreign workers must be paid the same special rate of pay and be offered the same benefits like housing and transportation. *Id.*

Defendant Coleman Industries, Inc. is an Oregon corporation that employs agricultural workers whose principal place of business is in Saint Paul, Oregon. *Declaration of John Coleman*, ¶ 3 ("*Coleman Decl.*"). Defendant Coleman Agriculture, Inc. is an Oregon corporation that primarily operates/manages farms whose principal place of business is in Gervais, Oregon. *Coleman Decl.*, ¶ 4. The Coleman Defendants hired agricultural workers during 2017 and 2018 to, among other things, plant, train, weed, and harvest hops at various farms they manage throughout the Willamette Valley. *Coleman Decl.*, ¶ 5.

In 2017, a separate entity, Valley Hop Farms, Inc.,[1] contracted with a farm labor contractor, Frank's Farm Labor Contractor ("Franks"), for farm workers to plant, string, train, weed and harvest hops exclusively at Valley Hop Farms, located in Mt. Angel, Oregon. *Coleman Decl.*, ¶ 5. In 2017, Plaintiffs Maria Ortiz Bazan, Marisela Hernadez, Bernabe Cortes Reyes, Martina Anastasio Hernandez, Rosa Lopez, Asuncion Reyes Perez, Leonardo Silva Chavez, and Juan Toribo Lopez ("Franks Plaintiffs") were employed directly by Franks and to the extent they worked as contract workers for the Coleman Defendants, all such work was done at the Valley Hop Farms. *Coleman Decl.*, ¶ 6.

Also in 2017 and 2018, the Coleman Defendants successfully applied for and were able to access workers through the H-2A Program in order to plant, train, weed, and harvest hops at several other farms they manage in the Willamette Valley where housing was available for these workers. *Coleman Decl.*, ¶ 10. None of these foreign workers worked at Valley Hop Farms. *Coleman Decl.*,

---

[1] Valley Hop Farms, Inc. is a separate entity from Coleman Industries, Inc. and Coleman Agriculture, Inc. and it manages Valley Hop Farms in Mt. Angel, Oregon. Coleman Industries, Inc. provides payroll services for a number of business, including Valley Hop Farms, Inc. The contractual rates paid to Franks were paid through Coleman Industries, Inc. *Coleman Decl.*, ¶ 6.

¶ 10. Valley Hop Farms is managed separately from the farms managed by the Coleman Defendants. *Coleman Decl.*, ¶ 6.

Defendant wafla is a Washington non-profit agricultural trade association that assists its members in the application and administration of the H-2A temporary agricultural labor program. *Panko Decl.*, ¶ 3. The Coleman Defendants were members of wafla in 2017 and 2018 and contracted with wafla through an Agency and Indemnity Agreement ("Agency Agreement") for assistance in applying for foreign workers and recruiting domestic workers as necessary under the H-2A Program. *Panko Decl.*, ¶¶ 3, 10, Ex. 1 ("Agency Agreement").

As an agent for the Coleman Defendants, wafla's assistance included, among other things, preparing and submitting the forms necessary to participate in the H-2A Program with various federal and state agencies on behalf of the Coleman Defendants, facilitating the recruitment of domestic workers as required under the program for Coleman Defendants, and facilitating, through wafla's agents, the recruitment of foreign workers through the U.S. Consulate and for transportation of these workers to the farm sites identified by the Coleman Defendants and approved by the U.S. Department of Labor. *Panko Decl.*, ¶ 5. However, as the Agency Agreement makes clear, at no time was wafla the employer of any foreign or domestic farmworkers for the Coleman Defendants in either 2017 or 2018. *Panko Decl.*, ¶ 5. This is consistent with how wafla carried its obligations under the Agency Agreement.

## POINTS AND AUTHORITIES

**I.      Standard of Review.**

Summary judgment is appropriate "if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Walls v. Cent. Contra Costa Transit Auth.,* 653 F.3d 963, 966 (9th Cir. 2011). A party taking the position that a material fact cannot be disputed must support that position either by (1) citation to specific evidence of record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of this motion only), admissions, interrogatory answers, or other materials," or (2) by either showing that the evidence

of record does not establish the presence of such a dispute, or by showing that an opposing party is unable to produce sufficient admissible evidence to establish the presence or absence of such a dispute. Fed R. Civ. P. 56(c).

Once the moving party meets its burden, the burden shifts to the opposing party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); *Auvil v. CBS "60 Minutes",* 67 F.3d 816, 819 (9th Cir. 1995). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 369 (9th Cir. 1998).

In evaluating a motion for summary judgment, the district courts must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000); *Lytle v. Household Mfg.,* 494 U.S. 545, 554-55 (1990).

**II.    Legal Argument.**

    **A.    Wafla is entitled to summary judgment on all claims because wafla did not employ the Plaintiffs.**

Preliminarily, Plaintiffs Complaint fails to even allege that wafla jointly employed Plaintiffs,[2] only that wafla was a joint employer of the foreign agricultural workers. *Complaint*, ¶11. In addition, it is undisputed that none of the Plaintiffs were hired or paid by wafla. *See Panko Decl.*, ¶ 7. Plaintiffs were either (a) hired directly by Franks (all Plaintiffs except Rendon (*See Complaint*, ¶ 33) to perform seasonal work at Valley Hop Farms or (b) hired by the Coleman Industries, Inc. (Rufino Rendon) for seasonal work at hops farms throughout the Willamette Valley. *Complaint*, ¶ 33.

Rather, Plaintiffs appear to incorrectly imply that wafla was a "joint employer" of Plaintiffs with the Coleman Defendants and contend that wafla is jointly responsible for all of the actions of

---

[2] The Complaint only alleges "Defendant Wafla arranged the employment of foreign agricultural workers under the H-2A program . . . and was a joint employer of the workers in 2017." *Complaint*, ¶ 11. Plaintiffs fail to allege that wafla was their employer.

the Coleman Defendants. As Plaintiffs point out, whether wafla is a joint employer is based on consideration of various factors making up the "economic reality" test. *Torres-Lopez v. May,* 111 F.3d 633, 639-40 (9th Cir. 1997). Factors to be considered include: the nature and degree of control of the workers; the degree of supervision, direct and indirect, of the work; the power to determine the pay rates or the method of payments of the workers; the right, directly and indirectly, to hire, fire, or modify the employment conditions of the workers; and preparation of payroll and the payment of wages. *Id.* In addition, there are several other "non-regulatory factors" courts consider in deciding whether a joint employment relationship exists including control of premises and equipment and permanence in the working relationship. *Id.* No specific factor is determinative as to whether a joint employment relationship exists and all relevant factors must be considered. *Id.* Weighing the relevant factors here clearly shows wafla was not a joint employer.

1. **Wafla had no involvement in or control over Plaintiffs' work.**

It is undisputed that wafla had no involvement in Plaintiffs' work for Coleman Defendants. Wafla's sole involvement was as an agent for the Coleman Defendants to assist in their efforts to obtain both domestic and foreign workers for its hops operations under the H2-A Program in 2017 and 2018. *Panko Decl.*, ¶ 5. None of the Plaintiffs were aware of any of the activities undertaken by wafla provided for the Coleman Defendants. *Declaration of Timothy J. Bernasek,* ¶ 2, Ex. 1, Response No. 1 ("*Interrogatory Response*"). When asked to describe any work they performed for wafla, all Plaintiffs indicated they had no known involvement with wafla. *Interrogatory Response No. 1* ("I do not know those details"). Plaintiffs indicated they were supervised by either the Coleman Defendants or Franks. *See* Interrogatory Response No. 3. There is simply no evidence that wafla exerted any control over the type of work Plaintiffs performed in contrast to the facts of *Torres-Lopez v. May*. Instead, wafla merely provided information about the number and type of workers the Coleman Defendants needed to the federal and state agencies involved in the Coleman Defendants' H-2A application. *Panko Decl.*, ¶ 8. Wafla's role was that of an agent, not an employer.

### 2. The Coleman Defendants and Franks were the direct supervisors of the Plaintiffs, not wafla.

To establish joint employment, another factor considered is the extent to which the alleged joint employer directly or indirectly supervised the employees in question. *See Torres-Lopez v. May*, 111 F.3d 633 (9th Cir. 1997). As discussed above, none of the Plaintiffs were even aware of what wafla did for the Coleman Defendants and all indicated that they worked for and were supervised by the Coleman Defendants or Franks. *Interrogatory Response* No. 1.

Plaintiffs performed hops work. *See Interrogatory Response No. 3.* Wafla did not, directly or indirectly, supervise the Plaintiffs, rather, wafla's role was limited to in assisting the Coleman Defendants find workers for farms they managed in Independence, St. Paul, and Gervais, Oregon.

### 3. Wafla did not determine the pay rates or methods of payments of the Plaintiffs.

Another factor the Court considers is pay rates or method of pay. The Franks Plaintiffs were hired, employed, and paid by Franks. *Coleman Decl.,* ¶ 7. Valley Hop Farms, Inc. contracted with Franks for the Franks Plaintiffs to perform hops work at Valley Hop Farms at a contracted rate. *Coleman Decl.*, ¶¶ 6-8, Ex. 1, ("Frank's Contract"). As is typical in these types of arrangements, Franks was paid a contracted hourly rate for each employee and then Franks independently determined the payment method and paid its employees directly. *Coleman Decl.*, ¶ 9.

In 2017 and 2018, the Coleman Defendants hired Plaintiff Rufino Rendon ("Plaintiff Rendon") and determined his pay rate and the method of payment. *Coleman Decl.*, ¶ 14. Wafla had nothing to do with establishing these pay rates or determining the method of payment of any of the Plaintiffs.

### 4. The Coleman Defendants and Franks hired/fired/modified the working conditions of the Plaintiffs, not wafla.

As indicated above and as provided in the Agency Agreement, wafla served as an agent for the Coleman Defendants in order to assist their efforts to secure foreign and domestic workers for

hop farms they managed in 2017 and 2018. *Panko Decl.*, ¶¶ 4-5. Coleman Defendants' 2017 and 2018 H-2A applications also stated wafla was acting as an agent, with the exception of one 2017 application which wafla selected "joint employer" based on an error of interpretation of the regulations by the United States Department of Labor. *Panko Decl.*, ¶ 6. This incorrect characterization on one 2017 application does not change the nature of wafla's involvement as an agent, rather than as a joint employer, for the Coleman Defendants.

All decisions related to hiring/firing/modifying the working conditions of the Plaintiffs were the responsibility of either the Coleman Defendants or Franks. *Coleman Decl.*, ¶ 15. In fact, the Agency Agreements in 2017 and 2018 provide that "[t]he Member shall be the exclusive employer of all workers recruited or hired pursuant to the H-2A program and the services provided under this Agreement." *Agency Agreement*, B4 2017, B3 2018. To the extent wafla advanced any fees to recruit foreign workers or advertise jobs to domestic workers, these fees were reimbursed by the Coleman Defendants. *Coleman Decl.*, ¶ 12. There is no evidence that wafla hired/fired/modified the working conditions of any of the Plaintiffs.

     **5.**     **Wafla did not prepare payroll for or pay any of the wages of the Plaintiffs.**

In 2017, the Franks Plaintiffs were paid by Franks. *See* Franks Contract. Plaintiff Rendon was paid by the Coleman Defendants in 2017 and 2018. *Coleman Decl.*, ¶ 14. At no time in either 2017 or 2018 did wafla prepare payroll for or pay any of the wages of any of the Plaintiffs. *Panko Decl.*, ¶ 7.

     **6.**     **None of the non-regulatory joint employment factors apply to wafla.**

Finally, the non-regulatory joint employment factors discussed in *Torres-Lopez v. May* have no applicability to wafla. For example, the "premises and equipment" used in the work was owned by the Coleman Defendant or Valley Hop Farms, Inc. *Coleman Decl.*, ¶ 16. Wafla does not own any agricultural land or equipment. *Panko Decl.*, ¶ 9. Further, there was no "permanence in the working relationship" between wafla and Plaintiffs because wafla had no working relationshi

to any of them at all because it is not an agricultural employer (or contractor) and wafla's employees are not engaged in agricultural work. *Panko Decl.*, ¶ 9.

In summary, the application of the economic realities test clearly shows that wafla was not a joint employer of Plaintiffs with the Coleman Defendants. Instead, wafla was merely acting as an agent for the Coleman Defendants and assisted them with their efforts to successfully use the H-2A Program. Accordingly, wafla's motion for summary judgment on all claims against wafla should be granted.

**B.  Defendants are entitled to summary judgment on Plaintiffs' MSPA claim related to timely payment of wages.**

**1.  MSPA Standards.**

MSPA is a statutory scheme designed to protect migrant and seasonal agricultural workers. The provision applicable to the payment of wages when due states:

> Each farm labor contractor, agricultural employer, and agricultural association which employs any seasonal agricultural worker shall pay the wages owed to such worker when due.

29 U.S.C. § 1832(a).

The Franks Plaintiffs were hired directly by Franks in 2017 and allegedly were paid between $11.25 and $12.25 per hour. *See Complaint*, ¶¶ 38-40. Plaintiffs Marisela Henandez and Rufino Rendon were employed by Coleman Industries in 2017 and Rendon was employed by Coleman Industries, Inc. in 2018. *Coleman Decl.*, ¶ 14. Both were paid the adverse effect wage rate. *Coleman Decl.*, ¶ 14.

There is no evidence in the record showing that Franks or the Coleman Defendants failed to pay any of the Plaintiffs any of these wages when due.

**2.  Corresponding employment under the H-2A Program.**

Plaintiffs' claims under MSPA, as well as the other claims subject to this motion, are based

/ / /

/ / /

on the incorrect assertion that the Franks Plaintiffs were engaged in "corresponding employment[3]" with foreign workers brought in by the Coleman Defendants to work under the H-2A Program.

20 CFR § 655.122(a) prohibits H-2A employers from engaging in preferential treatment of foreign workers: an "employer's job offer must offer to U.S. workers no less than the same benefits, wages, and working conditions that the employer is offering, intends to offer, or will provide to H-2A workers." In other words, the H-2A Program requires that an H-2A employer provide its domestic workers the same pay rate as foreign workers brought in to do the work described in the certified H-2A application. If an H-2A employer's domestic worker engages in the same type of work as its foreign workers, then the employer must pay the domestic workers the same wage rate as the foreign workers.

In 2017 and 2018, the Coleman Defendants were an H-2A employer. *Coleman Decl.*, ¶ 10. However, the Coleman Defendants' H-2A application does not include Valley Hop Farms, instead, the farms of intended employment for workers (both foreign and domestic) was specifically limited to farms in Independence (Alluvial Farms), St. Paul (Home Farm) and Gervais Oregon. *Coleman Decl.*, ¶¶ 11, 13, Ex. 2, "2017 H-2A Application"). These were the farms were managed by the Coleman Defendants. *Coleman Decl.*, ¶ 13. Accordingly, any domestic worker engaged in corresponding hops work at those sites would be paid at least the wage rate of at least $13.38 per hour (known as the Adverse Effect Wage Rate or AEWR). *Coleman Decl.*, ¶ 11; 29 CFR 502.10 ("Adverse effect wage rate (AEWR) means the minimum wage rate that the Administrator of the Office of Foreign Labor Certification (OFLC) has determined must be offered and paid to every

---

[3] 20 CFR 655.5 defines "corresponding employment" under a similar foreign worker program (H-2B) as:

> (1) The employment of workers who are not H-2B workers by <u>an employer that has a certified H-2B Application for Temporary Employment Certification</u> when those workers are performing either substantially the same work included in the job order or substantially the same work performed by the H-2B workers . . .
>
> * * *
>
> (2) To qualify as corresponding employment, the work must be performed during the period of the job order, including any approved extension thereof. (emphasis added).

Page 9     DEFENDANTS COLEMAN INDUSTRIES, INC., COLEMAN AGRICULTURE
INC., AND WAFLA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

H-2A worker employed under the DOL-approved Application for Temporary Employment Certification in a particular occupation and/or area, as well as to U.S. workers hired by employers into corresponding employment during the H-2A recruitment period, to ensure that the wages of similarly employed U.S. workers will not be adversely affected"); *Bernasek Decl.*, ¶ 4, Ex. 3, "DOL AEWR Trend Sheet" (showing 2017 AEWR for Oregon as $13.38).

However, the Franks Plaintiffs fail to establish they were in "corresponding employment" with the Coleman Defendants' foreign workers because they were (a) not employed by the Coleman Defendants and (b) worked at a separate location from the Coleman Defendants' H-2A workers. The Franks Plaintiffs were employed by Franks (who contracted with Valley Hop Farms, Inc.) to perform work at Valley Hop Farms in Mt. Angel, Oregon. *Coleman Decl.*, ¶¶ 5-6. However, the Franks Plaintiffs worked exclusively at the Valley Hop Farms in Mt. Angel, a farm not managed by the Coleman Defendants, and not at any of the farms specifically and intentionally provided in the Coleman Defendants' 2017 H-2A application materials. *Coleman Decl.*, ¶ 5-8. Conversely, Valley Hop Farms, Inc. did not use the H-2A program and is not an employer subject to 20 CFR § 655.122. *Coleman Decl.*, ¶ 6.

Conversely, Plaintiff Rendon was employed directly by Coleman Industries, Inc. in 2017. The Coleman Defendants also used the H-2A program, therefore they were required to pay its foreign and domestic workers a wage rate of at least $13.38 per hour (known as the Adverse Effect Wage Rate or AEWR). Coleman Industries, Inc. paid Rendon the adverse effect wage rate. *Coleman Decl.*, ¶ 17, Ex. 3, "Rendon Payroll Records." While the Franks Plaintiffs were allegedly paid between $11.25 and $12.25 per hour, they were employed by Franks and at Valley Hop Farms managed by Valley Hop Farms, Inc. *See Complaint*, ¶¶ 38-40.

Since none of the Franks Plaintiffs were subject to the AEWR, neither Franks nor the Coleman Defendants were obligated to pay the AEWR rate to the Franks Plaintiffs. Instead, the workers were required to be paid at least the minimum wage and there is no evidence in the record that indicated they were not paid at least the required rate. Therefore, Plaintiffs' MSPA claims that they were not paid their wages when due fails. Defendants' motion for summary judgment

should be granted.

### C. Defendants are entitled to summary judgment on Plaintiffs' Breach of Contract claims.

The Franks Plaintiffs' breach of contract claim is based on the two false premises: (a) the Franks Plaintiffs were engaged in "corresponding employment" with the workers brought in under the H-2A program and (b) the Franks Plaintiffs had a contract with the Coleman Defendants.

Pursuant to 20 CFR § 655.122(a), the Coleman Defendants had a legal obligation to pay their foreign and domestic workers who were in corresponding employment the same rate of pay. This does not create a private contract between domestic workers who were contracted to perform labor for a separate entity at a separate farm. Accordingly, Plaintiffs incorrectly assert that they were entitled to the AEWR rate and the Coleman Defendants breached a contract with them.

The Plaintiffs subject to this motion were employed by Franks Farm and contracted to perform hops work at the Valley Hop Farms in Mt. Angel. The Coleman Defendants' H-2A workers did hops work at farms managed by the Coleman Defendants in Independence, St. Paul, and Gervais. Since none of the Franks Plaintiffs worked at farms of intended employment as provided in the approved H-2A application materials, they were not engaged in corresponding employment with the workers working under the H-2A program. Plaintiff Rendon was paid the adverse effect wage rate. *Coleman Decl.*, ¶ 17, Ex. 3. The Coleman Defendants had no contract with the Franks Plaintiffs. Therefore, there was no breach of contract and Defendants' motion for summary judgment should be granted as to this claim.

### D. Defendants are entitled to summary judgment on Plaintiffs' Violation of Timely Payment of Wages claim.

Again, Plaintiffs' claim that the Coleman Defendants failed to timely pay their wages fails for the same reasons as discussed above. Since Plaintiffs were not engaged in corresponding employment, neither Franks nor the Coleman Defendants were required to pay them the AEWR. There is no evidence to suggest that the Plaintiffs were not timely paid the wages for all hours worked. Therefore, Plaintiffs claim that they were not timely paid all wages owed fails and

Defendants motion for summary judgment on this claim should be granted.

## CONCLUSION

For the reasons set forth above, the Court should enter an Order granting Defendants' motion for partial summary judgment.

Dated this 28th day of August, 2020.

DUNN CARNEY ALLEN HIGGINS & TONGUE LLP

*/s/ Chelsea J. Glynn*
**Timothy J. Bernasek, OSB No. 990273**
**Email: tbernasek@dunncarney.com**
**Chelsea J. Glynn, OSB 114004**
**Email: cglynn@dunncarney.com**
Attorneys for Defendants Coleman Industries, Inc., Coleman Agriculture, Inc., and wafla