**Lizeth Marin, OSB #185269**
lizeth@nwjp.org
**D. Michael Dale, OSB #771507**
michaeldale@dmichaeldale.net
Northwest Workers' Justice Project
812 SW Washington St. Suite #225
Portland, OR 97205
Telephone: (503) 525-8454
Fax: (503) 946-3029

Attorneys for Plaintiffs
(Balance of attorneys for Plaintiffs on final page)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **MARIA ORTIZ BAZAN, MARISELA HERNANDEZ, BERNABE CORTES REYES, MARTINA ANASTASIO HERNANDEZ, ASUNCION REYES PEREZ, LEONARDO SILVA CHAVEZ, RUFINO RENDON** and **JUAN TORIBO LOPEZ,** individuals, | Case No.: 6:19-cv-01823-mk |
| Plaintiffs, | SECOND AMENDED COMPLAINT |
| v. | DEMAND FOR JURY TRIAL |
| **COLEMAN INDUSTRIES, INC,** an Oregon Domestic Business Corporation and **COLEMAN AGRICULTURE, INC.,** an Oregon Domestic Business Corporation, and **WAFLA,** a Washington non-profit organization, | |
| Defendants. | |

# I. INTRODUCTION

1.      Maria Ortiz Bazan, Marisela Hernandez, Bernabe Cortes Reyes, Martina Anastasio Hernandez, Asuncion Reyes Perez, Leonardo Silva Chavez, Rufino Rendon, and Juan Toribo Lopez ("Plaintiffs") bring this action against Coleman Industries, Inc., Coleman Agriculture, Inc., and wafla (collectively "Defendants") for violation of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801 *et seq.* (hereinafter "AWPA"); Breach of Contract; O.R.S. § 652.150; 42 U.S.C. § 1981, O.R.S. § 659A.030, O.R.S. § 659A.112, 42 U.S.C. § 12112, and 42 U.S.C. § 2000e-2 *et seq*.

# II. JURISDICTION

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the laws of the United States, 29 U.S.C. § 1854(a), as it arises under AWPA and under 28 U.S.C. § 1337, as it arises under acts of Congress regulating commerce.

3.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the claims based on Oregon law, as they are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b)(2) because Marion County is in this district and the events giving rise to Plaintiffs' claims occurred in this district.

# III. PARTIES

5.      Maria Ortiz Bazan, Marisela Hernandez, Bernabe Cortes Reyes, Martina Anastasio Hernandez, Asuncion Reyes Perez, Leonardo Silva Chavez, Rufino Rendon, and Juan Toribio Lopez are natural persons who were employed by Defendants in Marion County,

Oregon.

6. At all times relevant to this action, Coleman Industries, Inc. was an Oregon domestic business corporation operating agricultural farms.  Its principal place of business is Marion County.

7. At all times relevant to this action, Coleman Agriculture, Inc. was an Oregon domestic business corporation operating agricultural farms. Its principal place of business is Marion County.

8. At all times relevant to this action, wafla, was a Washington non-profit corporation organized under section 501(c)(6) of the Internal Revenue Code.

9. At all relevant times, Defendants employed at least 15 people and were engaged in an industry affecting commerce.

## IV. FACTUAL ALLEGATIONS

10. Defendants Coleman Industries, Inc. and Coleman Agriculture, Inc. (collectively "Coleman") are parts of a complex corporate structure of farms and businesses primarily owned and managed by descendants of Robert and Martha Coleman in Marion County, Oregon.

11. Defendant Coleman Agriculture, Inc., was originally formed to manage the farms owned by family corporations of John P. Coleman, Thomas Coleman, and Ben Coleman. Coleman Agriculture, Inc., is owned by Westwood Farms, owned by John P. Coleman and his wife Elizabeth Coleman, Echo Ridge Farms, owned by Thomas Coleman and his wife Melissa Coleman, and Champoeg Farms, owned by Ben Coleman and his wife Jen Coleman.

12. John P. Coleman manages Coleman Agriculture, Inc.

13. Defendant Coleman Industries, Inc., is owned by Coleman Farms, Inc., owned by John F. Coleman and his wife, Kathleen Coleman, and by Fairfield Farms, Inc., owned by Bill

Coleman and his wife, Kathryn Coleman.

14. Coleman Industries, Inc. is an umbrella organization of a multitude of Coleman organizations, including Coleman Agriculture and Valley Hop Farms.

15. Defendant Coleman Industries, Inc. provides payroll, purchasing and accounting management services to the various farms, including Coleman Agriculture, Inc., and Valley Hop Farms, that are part of the Coleman family farming enterprise, and provides a means of accounting among the various farms for common expenses shared among the farms.

16. Several of these farms, including Coleman Agriculture, Inc. and Valley Hop Farms, produce hops.

17. Defendant wafla is an agricultural association, including as that term is defined under 29 U.S.C. § 1802(1).

18. Defendants Coleman Agriculture, Inc. and Coleman Industries, Inc. are members of wafla.

19. Defendant wafla arranged the employment of foreign agricultural workers under the H-2A program for Defendants Coleman Industries, Inc. and Coleman Agriculture, Inc., and was a joint employer of the workers in 2017.

20. Wafla filed an H-2A application to allow wafla to import and employ forty-four workers from April 11, 2017, until November 30, 2017. In this application, wafla repeatedly represented that it was to be an employer. It listed wafla as the "main employer," with Coleman Industries and Coleman Agriculture also listed as employers. This application was approved, and H-2A workers were employed pursuant to this certification to work at Coleman farms.

21. In 2016, Frank's Farm Labor Contracting, the labor contracting business of Frank de la Cerda, supplied workers, including all of the Plaintiffs except Rufino Rendon, to the

Alluvial Farm of Defendant Coleman Agriculture, Inc.

22.     Before the start of the 2017 growing season, Francisco de la Cerda's (Frank's Farm Labor Contracting) crew was reassigned by John P. Coleman, the hops farming manager for Coleman Agriculture, Inc., to the Valley Hop Farms, a much smaller farm with much less work available.

23.     The Coleman Defendants decided the farm at which Francisco de la Cerda's would work and selected Valley Hops Farm, which was under their control.

24.     Plaintiffs (except Rendon) were jointly employed by Frank's Farm Labor Contracting and Coleman Agricultural, Inc. in 2016.

25.     Plaintiffs (except Rendon) were jointly employed by Frank's Farm Labor Contracting and Valley Hop Farms in 2017.

26.     Valley Hop Farms is a corporation owned by John F. Coleman, Bill Coleman, John P. Coleman, Ben Coleman, Thomas Coleman, and Michael Coleman.

27.      Ben Coleman is president of Valley Hop Farms.

28.     John P. Coleman is secretary of Valley Hop Farms.

29.     Valley Hop Farms is controlled by a board of directors consisting of members of the Coleman family that conducts a short meeting once a year.

30.     Valley Hop Farms is an *alter ego* to Defendant Coleman Agriculture, Inc., and Defendant Coleman Industries, Inc.

31.     In 2017 and 2018, Coleman Defendants were agricultural employers pursuant to the statutory definition of 29 U.S.C. § 1802(2).

32.     In 2017 and 2018, Plaintiffs were seasonal agricultural workers pursuant to the statutory definition of 29 U.S.C. § 1802(10)(a).

33.     In 2018, at the time Plaintiffs Rufino Rendon and Martina Anastasio Hernandez applied for work with Defendants, they were seasonal agricultural workers pursuant to the definition of 29 U.S.C. § 1802(10)(a).

34.     Plaintiff Rendon worked for Defendants in August 2018.

35.     During the course of employment, Plaintiffs worked on products that were produced for movement in interstate commerce or for incorporation as an ingredient in products that could be anticipated to move in interstate commerce.

36.     In 2017 and 2018, Defendants filed multiple Applications for Temporary Employment Certification with the U.S. Department of Labor to bring foreign workers to work on its farm under the H-2A visa program.

37.     The U.S. Department of Labor approved Defendant's H-2A applications for 2017 and 2018.

38.     As part of the H-2A application process, Defendants filed job orders with the Oregon Employment Department.

39.     The job orders contained the material terms and conditions of the Defendants' hired H-2A workers from April 11, 2017, through September 30, 2017, from August 17th, 2017, to September 30th, 2017, from April 2, 2018, to June 18th, 2018, and from August, 15th, 2018, to September 30th, 2018.

40.     In those job orders, Defendants sought to bring foreign non-immigrant workers to Oregon to work at, among other locations, Alluvial Farm, where Plaintiffs except for Rendon had worked in 2016.

41.     During each season, Defendants were required to engage in "positive recruitment" of U.S. workers until foreign workers departed for the work site in Oregon. 20 C.F.R. §

655.103(d).

42.     Jennifer Coleman, as an agent for Defendants Coleman, signed the job order on behalf of Defendants Coleman for work commencing in August 2017.

43.     John Coleman, owner of Coleman Industries, Inc., signed the job order on behalf of Defendants Coleman for work commencing in April 2018.

44.     Thomas Coleman, owner of Coleman Industries, Inc., signed the job order for Defendant wafla for work commencing in April 2017.

45.     As part of the H-2A application, Defendants assured the federal government that it would comply with all federal and state employment laws.

46.     Pursuant to federal regulations governing the H-2A program, Defendants were required to inform job seekers of the terms and conditions of the job.

47.     Defendants failed to inform job seekers of the terms and conditions of the job, including that work was available for U.S. workers.

48.     Pursuant to federal regulations governing the H-2A program, Defendants were required to provide employment to any qualified, eligible U.S. worker who applied to the employer until 50 percent of the period of the work had elapsed pursuant to 20 C.F.R. § 655.135(d).

49.     Defendants failed to provide employment to qualified, eligible U.S. workers, including Plaintiff Rufino Rendon and Plaintiff Martina Anastasio Hernandez, who applied to the employer before 50% of the contract period had elapsed.

50.     Each of the Plaintiffs had sufficient work experience and skill to perform the H-2A jobs.

51.     Plaintiff Rendon was not contracted through Franks Farm Labor Contracting, but

also worked for Defendants as a temporary seasonal worker in 2017 and 2018.

52.     Defendants were required under the H-2A program to pay workers an adverse effect wage rate (AEWR) set forth by the U.S. Department of Labor.

53.     Defendants' 2017 job orders specified that workers would be paid a wage rate of $13.38 per hour.

54.     Defendants paid Plaintiffs Maria Ortiz Bazan, Bernabe Cortes Reyes, Martina Anastasio Hernandez, Asuncion Reyes Perez, Leonardo Silva Chavez, and Juan Toribo Lopez an hourly rate of $11.25 for work performed during the 2017 job order contracts.

55.     Defendants paid Plaintiff Marisela Hernandez an hourly rate of $12.25 for work performed during the 2017 job order contracts.

56.     Defendants paid the foreign workers it hired for the H-2A jobs in 2017 the adverse-effect wage rate (AEWR) set by the U.S. Department of Labor of at least $13.38 per hour.

57.     Plaintiffs claim as unpaid wages the difference between the hourly rate of $13.38 and the hourly rate they were paid in 2017, plus, the difference between the reduced hours they were able to work in 2017 as compared to the hours worked by H-2A visa workers.

58.     During the course of Plaintiffs' employment with Defendants and during the period of employment covered by the H-2A job orders, Plaintiffs performed work included in the H-2A job order and/or work performed by Defendants' H-2A workers, including but not limited to walking through the hop fields removing weeds, driving the hop vine truck, planting, cleaning debris, and training the small hops shoots onto the twine.

59.     Plaintiffs work qualified as corresponding employment pursuant to 20 C.F.R. § 655.103(b).

60.     In 2018, Defendants did not solicit U.S. workers through Franks Farm, and did not otherwise recruit Plaintiffs other than Plaintiff Rufino to work.

61.     Defendants favored foreign H-2A workers over U.S. workers in their hiring and recruitment process.

62.     Because of the failure of Defendants to recruit Plaintiffs to work in 2018, none of the Plaintiffs were employed by Defendants in 2018 except for Plaintiff Rufino who was hired for work under the August 2018 job order, but not under the orders for April 2018 through June 2018.

63.     Defendants violated, without justification, the working arrangements with Plaintiffs in violation of 29 U.S.C. § 1822(c).

64.     Plaintiff Rendon was referred to Defendants' April hops job by the Oregon Employment Department.

65.     In the spring of 2018, Plaintiffs Rufino Rendon and Martina Anastasio Hernandez went to Defendants directly to ask for work for the hop season.

66.     Plaintiff Rendon is a U.S. citizen and has lived many years in the United States.

67.     Plaintiff Hernandez is a lawful permanent resident and has lived in the United States since 1984.

68.     Plaintiff Rendon worked for Defendants in August 2017.

69.     Plaintiff Rendon went to Coleman Defendants' office on or about March 1, 2018, and put his name and contact information on a paper indicating that he wanted to work with Defendants.

70.     Plaintiff Rufino Rendon again applied to work for Coleman Defendants in approximately the first week of April 2018.

71.     In approximately the first week of April 2018, Plaintiff Rufino Rendon went to Coleman Defendants' office and filled out an application.

72.     That same day, Coleman Defendants interviewed Mr. Rendon.

73.     During the interview, Coleman Defendants asked Plaintiff Rufino Rendon if he could lift 60 pounds.

74.     The job orders for the April and August 2018 hops work included a job qualification requiring workers to lift 60 pounds.

75.     Plaintiff Rufino Rendon explained that he could not lift 60 pounds because he had a previous injury to his arm and lower back.  Plaintiff Rufino Rendon also told Coleman Defendants that he had done the job before and was physically able to do the job.

76.     Coleman Defendants did not ask any other questions about Plaintiff Rufino Rendon's disability or perceived disability, or about what Mr. Rendon could or could not do, or whether he needed an accommodation to perform the work.

77.     Coleman Defendants told Plaintiff Rufino Rendon that they would call him about whether there was work for him.  Mr. Rendon called and left a message for "John" asking him for the temporary hop work.

78.     Coleman Defendants did not return Plaintiff Rufino Rendon's phone message.

79.     Coleman Defendants did not offer employment to Plaintiff Rufino Rendon or employ him in April 2018.

80.     Coleman Defendants perceived that Plaintiff Rendon had a physical impairment as defined under 42 U.S.C. §12102(3) and 29 C.F.R. §§ 1630.2(g)(l), because Plaintiff Rendon told Coleman Defendants that he could not lift 60 pounds because of injuries to his arm and lower back, and Coleman Defendants refused to hire him on that basis.

81.     Plaintiff Rendon, who was employed as a hop worker both before and after Defendants refused to hire him in April 2018, could satisfy legitimate job-related requirements and perform the essential functions of the position, and was qualified to do the job under 42 U.S.C. § 12112(8) and 29 C.F.R. § 1630.2(m).

82.     Plaintiff Rendon has a record of having a physical impairment that substantially limits one or more of his major life activities, and/o r Coleman Defendants regarded Plaintiff Rendon as having physical impairments that substantially limit one or more of his major life activities.

83.     Plaintiff Rendon was a qualified individual capable of performing the essential functions of the April hops job with Coleman Defendants, with or without a reasonable accommodation.

84.     Coleman Defendants treated Plaintiff Rendon less favorably than H-2A foreign workers.

85.     Plaintiff Rufino Rendon again applied for temporary hop work with Coleman Defendants in August 2018, and was hired and performed the work required.

86.     Defendants' 60 pound lifting requirement was not a prevailing practice consistent with business necessity or an essential function of the job.

87.     The job requirement listed in Coleman Defendants' April and August 2018 job orders requiring workers to lift 60 pounds had disproportionate negative impacts on individuals with disabilities and those perceived to have disabilities.

88.     As a direct result of Coleman Defendants' actions, Plaintiff Rendon has suffered economic loss and emotional distress, including but not limited to loss of wages, humiliation, and anxiety.

89.     On or about January 24, 2019, Plaintiff Rendon timely filed charges of discrimination with the Oregon Bureau of Labor and Industries (BOLI). These charges were simultaneously filed with the federal Equal Employment Opportunity Commission (EEOC) pursuant to a work sharing agreement between the two agencies.

90.     On August 15, 2019, the EEOC notified Plaintiff Rendon of his right to file a private civil suit with regard to his federal American with Disabilities Act (ADA) claim and national origin claim.

91.     On November 5, 2019, BOLI notified Plaintiff Rendon on his right to file a private civil suit on his Oregon Discrimination claims.

92.     In spring 2018, Plaintiff Martina Anastasia Hernandez went to Coleman Defendants to ask for work.

93.     After Plaintiff Martina Anastasia Hernandez went to Coleman Defendants to ask for work, she was asked to attend an orientation meeting on approximately May 14, 2018.

94.     When Plaintiff Martina Anastasia Hernandez showed up to the orientation, Coleman Defendants did not have an orientation meeting but instead asked her for her name and phone number and told her that they would call her for work.

95.     Coleman Defendants never called Plaintiff Martina Anastasia Hernandez for work or employed her in 2018.

96.     During the 2018 April hop season, Coleman Defendants contracted foreign workers.

97.     Upon information and belief, Coleman Defendants hired foreign 2018 H-2A workers after Plaintiff Rendon and Plaintiff Martina Anastasia Hernandez were not employed in spring 2018 for the full period of the job order contract.

98.     Defendant wafla negatively impacted domestic workers' opportunity to contract with the Coleman Defendants, including Plaintiffs Rendon and Hernandez, by filing for foreign H-2A workers, making arrangements for those workers, recruiting them, making transportation arrangements, and coordinating with Coleman Defendants with regard to a preferred worker list for H-2A workers.

99.     At all relevant times, Plaintiff Rendon and Plaintiff Martina Anastasia Hernandez were U.S. workers and persons within the jurisdiction of the United States.

100.    Defendants knowingly misrepresented the terms and conditions of Plaintiffs' employment, Plaintiff Rendon and Plaintiff Martina Anastasia Hernandez, including the availability of work.

101.    Defendants' violations were intentional under AWPA, 29 U.S.C. § 1854(c)(1).

102.    On August 23, 2019, Plaintiffs' counsel sent Defendants Coleman Industries, Inc. and Coleman Agriculture, Inc. written demand for payment of Plaintiffs' wages and outlining Plaintiffs' claims for breach of contract and under the Migrant and Seasonal Agricultural Workers Protection Act (AWPA). To date, Defendants have not tendered payment of wages to Plaintiffs.

103.    Plaintiffs have attempted in good faith to resolve the issues in dispute without litigation as required by 29 U.S.C. § 1854(c)(2).

104.    Plaintiffs Rendon and Martina Anastasia Hernandez have no adequate remedy at law.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Migrant and Seasonal Agricultural Workers Protection Act (AWPA)

105.    By failing to pay Plaintiffs other than Plaintiff Rendon the 2017 AEWR,

Defendants failed to pay all wages owed to Plaintiffs other than Plaintiff Rendon when due in violation of 29 U.S.C. § 1832(a).

106.    Defendants violated the terms of its working arrangement with Plaintiffs in violation of 29 U.S.C. § 1832(c) by failing to pay Plaintiffs other than Plaintiff Rendon the 2017 AEWR.

107.    Defendants knowingly provided false or misleading information to Plaintiffs Martina Anastasio Hernandez and Rufino Rendon concerning the terms, conditions or existence of employment available in violation of 29 U.S.C. §1831(e) by not telling those Plaintiffs that 2018 jobs were available to them.

108.    Defendants knowingly violated the terms of its working arrangements with Plaintiffs Rufino Rendon and Martina Anastasio Hernandez in violation of 29 U.S.C. § 1832(c) by failing to employ them in Spring 2018.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

109.    The issuance of clearance order by the Department of Labor created a contractual obligation to domestic workers, including the above named Plaintiffs, as an employment contract.

110.    Plaintiffs' interest in this contract was breached when Coleman favored H-2A workers with higher wages and employment contracts in 2017 and 2018.

111.    Plaintiffs' claim damages for the difference between the hourly AEWR rate and the hourly rate they were paid.

112.    Plaintiff Maria Martina Ortiz Bazan suffered damages of approximately $800.18 under the 2017 ETA clearance application.

113.    Plaintiff Marisela Hernandez suffered damages of approximately $134.19 under

the 2017 ETA clearance application.

114.    Bernabe Cortes Reyes suffered damages of approximately $3,164.38 under the 2017 ETA clearance application.

115.    Martina Anastasio Hernandez suffered damages of approximately $2,725.53 under the 2017 ETA clearance application.

116.    Asuncion Reyes Perez suffered damages of approximately $1,919.74 under the 2017 ETA clearance application.

117.    Leonardo Silva Chavez suffered damages of approximately $980.85 under the 2017 ETA clearance application.

118.    Juan Toribio Lopez suffered damages of approximately $2,143.38 under the 2017 ETA clearance application.

119.    Defendants breached Plaintiffs Rufino Rendon and Martina Anastasio Hernandez's contract rights by failing to hire Rendon in April 2018 and failing to hire Martina Anastasio Hernandez in April 2018 and August 2018.

120.    Martina Anastasio Hernandez suffered damages of approximately $10,604.12 under the 2018 ETA clearance application.

121.    Rufino Rendon suffered damages of approximately $6,212.80 under the 2018 ETA clearance application.

### THIRD CLAIM FOR RELIEF
### Violations of Oregon's Timely Payment of Wages Law

122.    Defendants failed to pay Plaintiffs except for Plaintiff Rendon all of their wages when due upon termination of their employment within the time specified in O.R.S. § 652.145.

123.    Defendants' failure to pay Plaintiffs other than Plaintiff Rendon all of their wages upon termination of employment was willful.

124.     Plaintiffs other than Plaintiff Rendon are entitled under O.R.S. § 652.150 to recover statutory penalty damages in an amount equal to 240 times their hourly rate, plus reasonable attorneys' fees and costs for Defendants' failure to pay Plaintiffs' wages upon termination.

## FOURTH CLAIM FOR RELIEF
### Discrimination under 42 U.S.C. § 1981

125.     In 2018, Defendants deprived Plaintiffs Martina Anastasio Hernandez and Rufino Rendon of an equal right to make and enforce contracts in violation of 42 U.S.C. § 1981, which applies to persons within the United States.

126.     In 2018, Defendants deviated from their longstanding practice of using a domestic farm labor contractor to recruit and employ workers for the hops season.

127.     Furthermore, Defendants outright denied employment in hops when requested by Plaintiffs Martina Anastasio Hernandez and Rufino Rendon, confirming the belief that Defendants were discriminating against U.S. workers in its hiring of workers for the hops season.

## FIFTH CLAIM FOR RELIEF
### Discrimination under O.R.S. § 659A.030

128.     In 2018, By subjecting Plaintiff Rendon, a U.S. worker, to less favorable treatment and failing to hire Plaintiff Rendon because of his national origin, the Coleman Defendants discriminated against him in violation of O.R.S. § 659A.030.

## SIXTH CLAIM FOR RELIEF
### Oregon Employment Discrimination Against Persons with Disabilities O.R.S. § 659A.112

129.     The Coleman Defendants' actions against Plaintiff Rendon constituted unlawful discrimination against a worker with a disability or perceived disability, in violation of O.R.S. § 659A.112.

130.     The Coleman Defendants' utilization of standards and criteria, including the 60 pound lifting requirement, had the effect of discrimination on the basis of disability, in violation

of O.R.S. § 659A.112.

131.    The Coleman Defendants' use of qualification standards, including 60 pound

lifting requirement, screened out or tended to screen out individuals on the basis of disability or

perceived disability in violation of O.R.S. § 659A.112.

**SEVENTH CLAIM FOR RELIEF**
**Title I of the ADA 42 U.S.C. § 12112**

132.    The Coleman Defendants discriminated against Plaintiff Rendon on the basis of

his disability or a perceived disability in violation of 42 U.S.C. § 12112 by failing to hire him

because of his disability or perceived disability.

133.    The Coleman Defendants violated 42 U.S.C. §12112 by utilizing qualification

standards, including the 60 pound lifting requirement, that had the effect of discriminating,

discouraging and screening out workers on the basis of their disability or perceived disability.

**EIGHT CLAIM FOR RELIEF 42 U.S.C. 2000e-2**

134.    By subjecting Plaintiff Rendon, a U.S. worker, to less favorable treatment because

of his national origin, the Coleman Defendants discriminated against him in violation of 42

U.S.C. § 2000e-2.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

1.    On Plaintiffs First Claim for Relief (AWPA), award Plaintiffs actual damages or

statutory damages of $500.00 per violation, whichever is greater, and injunctive relief on

behalf of Plaintiffs Rendon and Hernandez pursuant to 29 U.S.C. § 1854(c)(1) ordering

Defendants to comply with the AWPA;

2.    On Plaintiffs Second Claim for Relief (Contract), damages of $28,685.17, or such

further amounts as are shown at trial;

3.      On Plaintiffs Third Claim for Relief (Wages), civil penalties in the amount of 240 times Plaintiffs' hourly wage pursuant to O.R.S. § 652.150 for failure to pay Plaintiffs' wages promptly upon termination, other than Plaintiff Rendon;

4.      On Plaintiff Rendon and Plaintiff Martina Anastasio Hernandez Fourth Claim for Relief, discrimination under 42 U.S.C. § 1981 compensatory damages including back pay and emotional distress damages in amount to be determined at trial but no less than $25,000 each.

5.      On Plaintiff Fifth, Sixth, Seventh, and Eighth claim judgment against Defendants and in favor of Plaintiff Rendon for compensatory damages including lost wages in the amount of $6,212.80 and noneconomic damages for Plaintiff Rendon of at least $25,000 or $200.00, whichever is greater, pursuant to O.R.S. 659A.885, and appropriate injunctive relief as determined by the court.

6.      Find that Plaintiffs are the prevailing party and award Plaintiffs reasonable attorney fees and costs under O.R.S. § 20.082, O.R.S. § 652.200, ORS 659A.885(1), 42 U.S.C. § 12205, and 42 U.S.C. §2000e-5(k).

7.      Award Plaintiffs pre-judgment interest and post-judgment interest as allowed by law; and

8.      Award Plaintiffs such other relief as this Court deems just and proper.


Respectfully submitted this 2nd day of February, 2021 by:

NORTHWEST WORKERS' JUSTICE PROJECT
OREGON LAW CENTER
LEGAL AID SERVICES OF OREGON

/s/Lizeth Marin
**Lizeth Marin, OSB #185269**

lizeth@nwjp.org
**D. Michael Dale, OSB #771507**
michaeldale@dmichaeldale.net
Northwest Workers' Justice Project
812 SW Washington St., Suite #225
Portland, Oregon 97205

Attorneys for Plaintiffs


**Mark Wilk, OSB #814218**
mwilk@oregonlawcenter.org
**Sarah J. Mangan #181975**
smangan@oregonlawcenter.org
**David Roy Henretty, OSB #814218**
dhenretty@oregonlawcenter.org
Oregon Law Center
230 W. Hayes St.
Woodburn, OR 97071
Telephone: (503) 981-0336
Fax: (503) 981 0373

Attorneys for Asuncion Reyes Perez, Juan Toribio
Lopez, and Rufino Rendon


**Laurie Hoefer, OSB #054234**
laurie.hoefer@lasoregon.org
**Alex Boon OSB #195761**
alex.boon@lasoregon.org
Legal Aid Services of Oregon
397 N 1st St.
Woodburn, OR 97071
Telephone: (503) 981-5291

Attorneys for Rufino Rendon